1  FREDRIC C. NELSON (CA SBN 48402)
   JOHN R. FOOTE (CA SBN 99674)
2  ADAM C. WRIGHT (CA SBN 261749)
   NIXON PEABODY LLP
3  One Embarcadero Center, 18th Floor
   San Francisco, California 94111
4  Tel:  (415) 984-8200
   Fax:  (415) 984-8300
5  fnelson@nixonpeabody.com
   jfoote@nixonpeabody.com
6  awright@nixonpeabody.com

7  Attorneys for Defendant
   Ladies Professional Golf Association
8

9                 UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                    OAKLAND DIVISION

12

13  LANA LAWLESS,                          CASE NO. CV-10-04599 SBA

            Plaintiff,                     NOTICE OF MOTION AND MOTION OF
14                                         DEFENDANT LADIES PROFESSIONAL
       vs.                                 GOLF ASSOCIATION'S MOTION TO
15                                         DISMISS PLAINTIFF'S COMPLAINT
    LADIES PROFESSIONAL GOLF
16  ASSOCIATION, et. al.                   Date:     May 17, 2011
                                           Time:     1:00 p.m.
17            Defendants.                  Dept.:    Courtroom 1
                                           Judge:    Hon. Saundra Brown Armstrong
18

19         NOTICE OF MOTION AND MOTION TO DISMISS

20  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

21         PLEASE TAKE NOTICE that on May 17, 2011, at 1:00 p.m. or as soon thereafter as the

22  matter can be heard in Courtroom 1 of the above-captioned Court, located at 1301 Clay Street,

23  Oakland, California, 4th Floor, the Honorable Saundra Brown Armstrong presiding, the Ladies

24  Professional Golf Association (the "**LPGA**") will and hereby does move for an Order dismissing

25  Plaintiff's complaint.

26         This Motion is made on the grounds that Plaintiff's complaint fails to state a claim upon

27  which relief can be granted, because Plaintiff lacks standing to bring her purported claims.  This

28  Motion is based on this Notice of Motion and Motion To Dismiss, the Memorandum of Points and

-1-

Authorities set forth below, and such other submissions or arguments as may be presented to the Court at or before the hearing, and seeks an order from the Court dismissing Plaintiff's complaint.

## MEET AND CONFER CERTIFICATION

Fredric C. Nelson, counsel for the LPGA, certifies that he met and conferred with counsel for Plaintiff prior to the filing of this Motion and requested that Plaintiff voluntarily dismiss the complaint due to Plaintiff's lack of standing.  Plaintiff's counsel declined to do so.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

It is clear from Plaintiff's complaint that she cannot allege a prerequisite for relief here – she has not suffered any injury.  The United States Constitution and the statutes under which Plaintiff seeks relief require an actual injury to state a claim.  Without alleging facts sufficient to establish an injury in fact, Plaintiff lacks standing and cannot proceed with her claims against the LPGA.

Although her complaint states in conclusory fashion that the LPGA has denied her membership by intentionally discriminating against her, there are no allegations to support that claim.  To the contrary, the allegations indicate that Plaintiff simply became aware of the LPGA's membership policy, felt it was discriminatory, and filed suit.  The complaint does not allege that she actually applied for membership.  Without a discriminatory act, there can be no injury; without injury, there can be no standing; and without standing, there can be no claim.

For these reasons, and as explained in more detail below, dismissal with prejudice is the only appropriate result.  The fundamental flaw in the complaint – that plaintiff lacks standing because she never applied for LPGA membership – cannot be cured by amendment, and the LPGA requests that its Motion be granted.

### STATEMENT OF FACTS

Plaintiff alleges that she is a "post-operative transsexual female" who has "felt like a female since birth" and "had gender reassignment surgery to harmonize [her] anatomy with [her] feelings."  Plaintiff's Complaint For Damages ("Compl."), ¶ 16.  On May 7, 2010, Plaintiff sent a letter to the LPGA regarding eligibility to compete on the LPGA Tour. Compl. Ex. A.  She stated in her letter that she "noticed on [the LPGA's] web site" that it required members to be female at birth, and she was

-2-

1   "hoping" to send in an application for membership.  *Id*.

2       The LPGA responded to Plaintiff's letter, confirming the existence of its membership

3   requirement and that it permitted "only women who are 'female at birth' to play on the LPGA Tour."

4   *Id*.  Thereafter, Plaintiff filed this lawsuit claiming the LPGA "denied" her membership by

5   "intentionally [] discriminat[ing]" against her.  Compl. ¶ 24.  She seeks relief against the LPGA

6   under California's Unruh Civil Rights Act, California Civil Code section 51 (the "Unruh Act") and

7   California Business & Professions Code section 17200 *et. seq*. (the "UCL").[1]

8                                **ARGUMENT**

9   **I.     LEGAL STANDARD**

10       A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the sufficiency of a

11  complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (holding plaintiff failed to state

12  a claim under section 1 of the Sherman Act because the factual allegations in the complaint were

13  insufficient to suggest an agreement).  A legally sufficient complaint "requires more than legal

14  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  It must

15  contain allegations that establish a right to relief beyond a "speculative level."  *Id*.  Failure to meet

16  these requirements justifies dismissing a claim.  *See id*.

17  **II.    TO SURVIVE A RULE 12(B)(6) MOTION, A PLAINTIFF MUST ALLEGE FACTS
        SUFFICIENT TO ESTABLISH BOTH ARTICLE III STANDING AND STATUTORY
18       STANDING**

19       A complaint must allege facts sufficient to establish each element of Plaintiff's case.  *See*

20  *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 317 (9th Cir. 1990).  Standing is an "indispensable"

21  element of every case.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

22  Thus, "[t]o survive a Rule 12(b)(6) motion to dismiss, [plaintiff] must allege facts in [her complaint]

23  that, if proven, would confer standing."  *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764,

24  771 (9th Cir. 2006).

25  _____

26  [1]     On November 30, 2010, the members of the LPGA Tour voted to amend their by-laws to remove the "female at
    birth" provision, of which Plaintiff complains here.  On February 9, 2011, the members of the LPGA Teaching and Club
27  Professionals division voted to remove the "female at birth" provision from its by-laws.  Therefore, as of the current date,
    there are no longer "female at birth" requirements for any tour or division of the LPGA.  Consequently, while not directly
28  pertinent to this motion, Plaintiff's claims for injunctive relief are now moot.

                                   -3-

Two types of standing are required in federal court – Article III standing and statutory standing. *See Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008). Article III standing derives from the United States Constitution and exists as an independent requirement for every case. *See id.* It requires that a plaintiff allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Statutory standing, on the other hand, depends on the specific requirements built into the law plaintiff claims entitles her to relief. *See, e.g., id.* (affirming dismissal for lack of statutory standing where plaintiff failed to make an adequate demand on the board of directors of a corporation as required by California Corporations Code section 800(b)(2) before filing suit).

### III. PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING BECAUSE SHE DOES NOT ALLEGE FACTS DEMONSTRATING AN ACTUAL INJURY

Federal courts are not meant to be "vehicle[s] for the vindication of the value interests of concerned bystanders." *Allen*, 468 U.S. at 751 (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)). They are meant to resolve disputes "'in the last resort, and as a necessity.'" *Id.* (quoting *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). Thus, to have Article III standing, a plaintiff must suffer an actual, concrete injury – "abstract" injury is insufficient. *Id.* Moreover, plaintiff bears the burden of "clearly" alleging facts demonstrating an actual injury. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). A claim for prospective relief requires similar allegations. *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (denying injunctive relief because there was no "real and immediate" threat of discrimination where plaintiffs simply alleged they might violate a law, might be charged, held to answer, and tried, and only then might be treated unequally).

Here, Plaintiff claims she was injured because the LPGA "denied" her membership by intentionally discriminating against her. Compl. ¶¶ 23, 24. However, there are no facts in the complaint that could establish such an injury.

### A. To Establish Injury Based On Discrimination, A Plaintiff Must Show The Defendant Actually Discriminated Against Her

One must be subjected to discrimination before one can claim any injury. *See Allen*, 468 U.S. at 754-56. For example, a plaintiff cannot challenge a private organization's allegedly discriminatory

-4-

membership policy without having actually applied to become a member of the organization.  *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972).  In *Moose Lodge*, plaintiff, an African-American, sued defendant, a fraternal organization, because defendant refused to serve plaintiff at its dining room and bar due to his race.  Defendant effectively had two relevant policies: one restricted membership to Caucasians; the other permitted those members to bring only Caucasian guests to the dining room and bar.  Plaintiff claimed both policies violated the Equal Protection Clause.  The District Court ruled in favor of plaintiff.

Upon review, the Supreme Court distinguished between plaintiff's right to challenge defendant's membership policy and his right to challenge the guest-service policy.  Plaintiff's injuries stemmed from the policy relating to guest service, not membership.  As a result, plaintiff "was not injured by [defendant's] membership policy since he never sought to become a member." *Id.* at 166-67.  Therefore, plaintiff had no standing to challenge the membership policy, and the Court reversed the District Court's decision.

In *Allen*, *supra*, plaintiffs were parents of African-American public school students.  Plaintiffs challenged IRS practices granting tax-exempt status to racially discriminatory private schools.  The District Court dismissed the case for lack of standing, but the D.C. Circuit reversed.  Upon review, the Supreme Court proceeded under the assumption that the IRS practices amounted to government discrimination.  The Court noted, however, that plaintiffs failed to allege that their children had applied or ever would apply to any private school.  *Allen*, 468 U.S. at 746.  As a result, they were not "victims of discriminatory exclusion" and were not "'personally denied equal treatment' by the challenged discriminatory conduct." *Id.* (citing *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984)).  Based on this reasoning, the Court held plaintiffs lacked standing and reversed the Circuit Court.

### B.   Plaintiff Fails To Establish Any Injury Because She Does Not Allege Facts Indicating The LPGA Actually Discriminated Against Her

Plaintiff claims she was injured because the LPGA "denied" her membership by intentionally discriminating against her.  Compl. ¶¶ 23, 24.  But nowhere in the complaint does Plaintiff allege that she applied for membership.  Therefore, there was no occasion or event "denying membership."  Indeed, the only allegation indicating any contact with the LPGA refers to a May 7, 2010, letter

-5-

seeking clarification regarding eligibility for membership.  *See id*. at ¶ 21, Ex. A.  The LPGA's

response simply confirmed its policy[2] that only women who were "female at birth" could compete in

the LPGA.[3]  *See id*., Ex. A, p. 2.  Confirmation that a policy exists is not the same as denying

membership.  Thus, the LPGA's response does not support Plaintiff's allegation that the LPGA

"acted intentionally to discriminate" against her.  *See* Compl. ¶ 24.  In fact, because the LPGA's

written response contradicts the allegation of discrimination (since it does not purport to "deny" her

membership), the Court need not accept that allegation as true.  *See Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations

that contradict matters properly subject to judicial notice or by exhibit").

The rationale of these cases is that until Plaintiff submits an application for membership, there

is no action to be taken – either to enforce the policy, waive it, or adopt some other course.  Like

plaintiffs in *Moose Lodge* and *Allen*, Plaintiff's failure to allege that she actually applied to the LPGA

– and was subject to its allegedly discriminatory policy – is fatal to her claim.

### C.   Plaintiff Also Fails To Establish Article III Standing In the Context Of Her UCL Claim

The Ninth Circuit has applied Article III standing requirements in the context of the UCL.

*See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001).  In *Lee*, plaintiff alleged the

defendants engaged in unfair business practices under the UCL by selling certain insurance policies

that promised – but never delivered – a series of increased dividends.  The court determined,

however, that plaintiff never purchased a policy from one of the defendants.  Therefore, plaintiff "did

not suffer any injury due to [that defendant's] conduct."  *Id*. at 1002.  As a result, plaintiff failed to

satisfy the Article III standing requirements and could not recover under the UCL.

Like the purchasing of an insurance policy in *Lee*, the application for membership in the

LPGA was the only possible means of suffering injury caused by the LPGA.  Simply put, Plaintiff

was never subject to discrimination by the LPGA.

---

[2]      As set forth in footnote 1 above, the "female at birth" requirement is no longer LPGA policy.

[3]      While a court generally may only consider material in the pleadings, it may also consider "[m]aterial that is properly submitted as part of the complaint."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (approving consideration of an exhibit attached to a complaint).

-6-

## IV.   PLAINTIFF FAILS TO ESTABLISH STATUTORY STANDING BECAUSE SHE DOES NOT ALLEGE FACTS DEMONSTRATING AN ACTUAL INJURY

To have standing, here, Plaintiff also must satisfy the statutory standing requirements of the law under which she claims relief.  *See Potter*, 546 F.3d at 1055.

### A.   Plaintiff Lacks Standing To Sue Under The Unruh Act Because She Fails To Allege Facts Indicating The LPGA Actually Discriminated Against Her

When considering standing for actions based on statute, courts should look to the purpose of the law in question.  *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007).  The purpose of the Unruh Act is to prevent business establishments from engaging in arbitrary discrimination.  *Id*. at 167.  Consistent with this purpose, a plaintiff must have been a victim of a "discriminatory act" to have standing under the Unruh Act.  *Id*. at 175.  In other words, "a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct."  *Id*.  Where an allegedly discriminatory policy exists, for example, "injury occurs when the discriminatory policy is *applied* to the plaintiff."  *Id*. at 175 (emphasis in original).

#### 1.   Awareness of an Allegedly Discriminatory Policy Alone Is Insufficient to Confer Standing Under the Unruh Act

A plaintiff is not a victim of a discriminatory act where she visits an organization intending to participate in its activities, becomes aware of its discriminatory policy, and decides to forego participating because of that policy.  *See Surrey v. Truebeginings, LLC*, 168 Cal. App. 4th 414, 418 (2008).  In *Surrey*, the male plaintiff visited a matchmaking website intending to use its services, only to find that the company offered certain free services exclusively to women.  After discovering this practice, he decided not to subscribe and filed suit under the Unruh Act and the Gender Tax Repeal Act of 1995 (Cal. Civ. Code § 51.6).  The trial court granted the defendant's motion for summary judgment on the ground that plaintiff lacked standing.  On appeal, the court affirmed because plaintiff suffered discrimination only "in the abstract."  *Id*. at 420. "The mere fact that [plaintiff] became *aware*" of the discriminatory policy "did not constitute a denial of his antidiscrimination rights."  *Id*. at 418 (emphasis added).

Thus, to have standing under the Unruh Act, a plaintiff must allege more than simple

-7-

awareness of an allegedly discriminatory policy.  She must have (1) "actually presented" herself to an organization intending to participate in its activities (2) in the same manner as any other member of the public and (3) been "actually denied" the right to participate.  *See Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1224 (2009).  In *Reycraft*, a disabled plaintiff visited her relative's mobile home park and learned that it was not equipped with a device to help her get in and out of the swimming pool.  As a result, she alleged the park denied her equal access to its pool and filed suit under the California Disabled Persons Act, which requires the same "actual denial" of rights the Unruh Act requires.  *See id*. at 1223.  The trial court determined that plaintiff failed to prove she had standing.  On appeal, the court agreed; plaintiff never registered as a guest or paid the entrance fee intending to gain access to the pool as any other member of the public would do.  Instead, she "merely bec[ame] aware of discriminatory conditions in the pool area."  *Id*. at 1225.  The court cited *Surrey* in finding there was no actual denial of rights.  *See id*. at 1224.

### 2.   Plaintiff Simply Became Aware of the LPGA's Membership Policy – The LPGA Never Discriminated Against Her

Here, Plaintiff never presented herself to the LPGA seeking to compete as any other member of the public would.  Her only action was to send a letter inquiring about the LPGA's policy regarding qualified competitors.  Like plaintiffs in *Surrey* and *Reycraft*, she simply became aware of an allegedly discriminatory policy.  But the policy was never actually *applied* to Plaintiff.  *See Angelucci*, 41 Cal. 4th at 175.  As a result, Plaintiff cannot allege facts to support standing in this matter.

### 3.   Injunctive Relief Is Also Unavailable

"[A]ny person aggrieved" is entitled to injunctive relief under the Unruh Act.  Cal. Civ. Code § 52(c).  But such relief is only available to the extent damages are available.  *See Midpeninsula Citizens For Fair Hous. v. Westwood Investors*, 221 Cal. App. 3d 1377, 1385 (1990) (holding plaintiff organization lacked standing under the Unruh Act because it was not "actually denied" its rights and therefore was not a "person aggrieved").  *See also* Cal. Civ. Code § 52(c).  As shown above, because Plaintiff does not have standing, she cannot recover damages.  The legislature intended to limit the relief available only to those plaintiffs "actually denied" rights under the Unruh

-8-

Act.  *See Reycraft*, 177 Cal. App. 4th at 1227.  Had the legislature intended to permit injunctive relief where a plaintiff was simply aware of an allegedly discriminatory policy, it would have included language found in other similar statutes allowing injunctive relief for "*potentially* aggrieved" parties. *Id.* (emphasis added).  Thus, plaintiff is not entitled to injunctive relief.[4]

**B.      Plaintiff Lacks Standing To Sue Under The UCL  Because She Fails To Allege Facts Establishing An Injury In Fact And The Appropriate Type Of Damages**

A private individual may seek relief under the UCL only if she has (1) "suffered injury in fact" and (2) "lost money or property as a result."  Cal. Bus. & Prof. Code § 17204.  Plaintiff has not.

**1.      The UCL's "Injury In Fact" Language Incorporates Article III Standing Requirements, Which Plaintiff Fails To Satisfy**

In 2004, California voters passed Proposition 64 ("Prop. 64"), which added the "injury in fact" requirement to section 17204 of the UCL.  The intent of this language was to prohibit a plaintiff from seeking relief under the UCL unless she "'has been injured in fact under the standing requirements of the United States Constitution.'"  *See Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 814 (2007) (quoting Prop. 64, § 1, (e)).  *See also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) (citing *Buckland* for the proposition that "the UCL incorporates Article III's injury in fact requirement").  As discussed above, United States Supreme Court precedent holds that standing to challenge allegedly discriminatory conduct requires that defendant actually discriminate against plaintiff.  *See Allen*, 468 U.S. at 754-56.  Thus, Plaintiff has no standing under the UCL to challenge the LPGA's allegedly discriminatory membership policies without having actually applied to become a member.  *See Moose Lodge*, 407 U.S. at 166; *see also Lee*, 260 F.3d at 1001-02.

**2.      Plaintiff Fails To Allege The Type Of Damages Necessary To Have Standing Under The UCL**

"'Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the [standing] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution.'"  *Walker v. Geico Gen. Ins. Co.*, 558

---

[4]      In any event, as noted *supra* at footnote 1, there no longer is a "female at birth" provision in the LPGA by-laws.

1    F.3d 1025, 1027 (9th Cir. 2009) (quoting *Buckland*, 155 Cal. App. 4th at 817).  Thus, a complaint

2    fails to state a cause of action under the UCL unless it alleges that the defendant possesses money or

3    property the plaintiff once possessed.  *See Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 U.S. Dist.

4    LEXIS 123329, *10 (C.D. Cal. 2009).  In *Pom*, plaintiff fruit juice producer filed suit under the UCL

5    claiming a competitor's unfair business practices harmed plaintiff's goodwill, injured its relationships

6    with customers, and caused a decrease in profits.  The court reasoned that lost profits were simply a

7    "'contingent expectancy of payment from a third party' – in this case, consumers."  *Id.* at *10 (citing

8    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003)).  As a result, the court

9    granted the competitor's motion for judgment on the pleadings because plaintiff "was not seeking to

10   recover anything that was once in its possession."  *Id.* at *13.

11          The reasoning and result of *Pom* apply here with even greater force.  Whereas the plaintiff in

12   *Pom* was a going concern with quantifiable sales, Plaintiff here must pile speculation – that she

13   would have applied for membership – upon speculation – that, having applied, she would have

14   qualified for a professional tour – to allege even potentially qualifying section 17204 damages for lost

15   income, lost endorsements, and attorney's fees.  Even then, like the profits at issue in *Pom*, Plaintiff

16   never *possessed* the allegedly lost income or endorsements.  They are at best contingent expectancies

17   of payment from third parties.  Nor do litigation expenses qualify as lost money or property under the

18   UCL.  *See Buckland*, 155 Cal. App. 4th at 815-16, 818-19.

19          For each of these reasons, the court should dismiss Plaintiff's UCL claim for lack of standing.

20                                          **<u>CONCLUSION</u>**

21          Based upon the foregoing, the LPGA requests that each and every one of Plaintiff's claims be

22   dismissed with prejudice.

23          Respectfully submitted,

24   Dated: February 22, 2011                    NIXON PEABODY LLP

25

26                                          By:   <u>   /s/  Fredric C. Nelson        </u>
                                                 Fredric C. Nelson
27                                               Attorneys for Defendant
                                                 Ladies Professional Golf Association
28

-10-